FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2018 DEC 10  AM 10: 42

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No:  **'18 - CV - 0 3 1 5 8**

COMCAST OF COLORADO I LLC,

   Plaintiff,

v.

ANDREW J. O'CONNOR and MARY E. HENRY, individually,

   Defendants.

---

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1446 (a)

---

**COMES NOW,** Defendants Andrew J. O'Connor and Mary E. Henry ("Defendants")

and files this Notice of Removal Pursuant to 28 U.S.C. § 1446 (a) of Case No:

2018CV31084, District Court, Boulder County, Colorado to the United States District

Court for The District of Colorado and as grounds therefore states as follows.

On November 21, 2018, Plaintiff Comcast of Colorado I LLC ("Plaintiff") erroneously

filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary

Injunction in District Court, Boulder County, Colorado Case No: 2018CV31084.Venue

and jurisdiction are improper in District Court, Boulder County, Colorado because

Plaintiff cites the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541 as

the governing substantive Federal law in this action and because several Federal

questions exist that must be litigated and determined under Federal law and because

diversity of citizenship exists pursuant to 28 U.S.C. § 1332 (a) and because Plaintiff is an

1

out of state corporation with its principal place of business located in Philadelphia, Pennsylvania and Defendants are residents of Lafayette, Colorado. Furthermore, the question of whether a U.S. citizen's private property rights are subordinated to the commercial interests of a private company is a Federal question and a matter of Federal law. This case implicates both the 4th and 5th Amendments of the U.S. Constitution. The 4th Amendment states: *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.* The 5th Amendment further protects property, by stating: *No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.* Plaintiff's unlawful actions have deprived Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution and Plaintiff's lawsuit clearly generates Federal questions.

Venue and jurisdiction are proper in the United States District Court for The District of Colorado District Court because Plaintiff cites the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541 as governing substantive Federal law in this action and because several Federal questions exist and must be litigated and determined under Federal law and because diversity of citizenship exists pursuant to 28 U.S.C. § 1332 (a) because Plaintiff is an out of state corporation with its principal place of business located in Philadelphia, Pennsylvania and Defendants are residents of Lafayette, Colorado and Plaintiff's lawsuit implicates the 4th and 5th Amendments of the U.S. Constitution which

must be determined under Federal law.

Jurisdiction and Venue are proper in the United States District Court, District of Colorado because the actions and transactions occurred in this District. Diversity of citizenship exists pursuant to 28 U.S.C. § 1332 (a) because Plaintiff is an out of state corporation with its principal place of business located in Philadelphia, Pennsylvania and Defendants are residents of Lafayette, Colorado. Plaintiff is an out of state corporation with its principal place of business located in Philadelphia, Pennsylvania. Defendants are residents of Lafayette, Colorado.

On November 21, 2018, Plaintiff erroneously filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in State Court in Case No: 2018CV31084, District Court, Boulder County, Colorado.

Plaintiff has embarked upon a campaign of intimidation, bullying, harassment, threats, character assassination and defamation against Defendants who are simply trying to protect their private property rights and health, safety and welfare. Plaintiff is a multi-billion dollar out of state corporation with its principal place of business located in Philadelphia, Pennsylvania, who is abusing legal process and attempting to use the courts in order to run over Defendants who are Colorado residents and trying to live their lives and Plaintiff intends to deprive them their private property rights, right of quiet enjoyment and right to live in a safe and healthy home environment. Defendants have been contacted on social media and by telephone and in person by neighbors about how

3

Comcast workers have threatened and intimidated residents, destroyed property and left gates open resulting in dogs escaping and being run over by cars. On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans. Is it any wonder that Defendants are afraid of Comcast?  Comcast poses an existential threat to the health, safety and welfare of Defendants and Coloradoans. Comcast is no better than the oil and gas industry that puts fracking wells near homes and schools. On November 21, 2018, Plaintiff continued a pattern of bullying, threatening, harassing, intimidating and damaging by filing a frivolous Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in the wrong Court. On November 29, 2018, Plaintiff's process server left summons and complaint on Defendants' steps with "11/29/18, 710 AM, illegible initials and served by refusal" handwritten on the top of the summons. Plaintiff failed to personally serve Defendants pursuant to C.R.C.P. 4 (e) (1) and (k). On December 3, 2018, Defendants filed Entry of Limited Appearance to Contest Service of Process and Motion to Quash Service of Process which is pending before the Court. It is well established in Colorado that service of summons in the cause is void, and a judgment entered in the absence of the defendant and upon such service is a nullity. *Toenniges v. Drake*, 7 Colo. 471, 4 P. 790 (1884).

4

In both Plaintiff's Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff's make numerous material misrepresentations and several unsubstantiated defamatory statements about Defendant O'Connor. Plaintiff's material misrepresentations and unsubstantiated defamatory statements include, but are not limited to, the following:

    a.   *As the supervisor and workers began leaving the Property, Mr. O'Connor got into his truck, pulled out of his driveway, and accelerated up onto the sidewalk where a Comcast representative was walking back to his vehicle.* (Verified Complaint, #19, pg.4)

    b.   *Comcast later received reports that Mr. O'Conner (sic) had threatened to shoot anyone who ventured on his Property without permission.* (Verified Complaint, #20, pg. 5)

    c.   *Mr. O'Connor locked the gate to his background to prevent Comcast representatives from accessing the easement.* (Verified Complaint, pg. 5)

    d.   *Mr. O'Connor used his dog and a "Beware of Dog" sign to intimidate and deter Comcast representatives from accessing the Easement.* (Verified Complaint, pg. 5)

The first outrageous and defamatory statement is that *as the supervisor and workers began leaving the Property, Mr. O'Connor got into his truck, pulled out of his driveway, and accelerated up onto the sidewalk where a Comcast representative was walking back to his vehicle.* In fact, Defendant O'Connor ("Defendant") did not drive onto the sidewalk

and does not own a truck. On October 17, 2018, Comcast workers knocked on Defendants' door three times demanding access to the backyard and three times Defendant told them no and requested $1000.00 to allow them access to our backyard. The last two Comcast workers that knocked on our door told Defendant that they were supervisors and that they had an easement giving them a legal right to access the backyard. Defendant told them that he had done some legal research and believed that Comcast does not own an easement on our property. Even if Comcast owned an easement, which Defendants don't believe that they do, Defendants have an absolute right to protect their private property and request payment to access their private property. The last worker that Defendant spoke with became very angry and said that he was going to call the police. Defendant left to run some errands and when he returned he saw two Lafayette Police Department vehicles parked in front of his home. Two police officers approached Defendant and questioned him and told him that a Comcast worker called them and reported that Defendant had swerved toward the workers with his car. Defendant told them that the Comcast worker lied and that he had not swerved toward anyone. The female police officer said that the Comcast worker was very adamant that Defendant had swerved toward him. Defendant told the police officer that he was just as adamant that he did not swerve toward the worker and that the worker was lying. The police officer then told Defendant that she didn't see what happened and that it was a case of "he said, she said." Defendant told the police officer that the Comcast workers were angry that he wanted to charge them to go onto our property and were lying to get him arrested in order to turn a civil dispute into a criminal matter. On October 17, 2018, Comcast workers committed serious misconduct including harassment and filing a false

police report against Defendant with the Lafayette Police Department. In fact, on October 17, 2018, Comcast used the Lafayette Police Department to further harass and intimidate Defendant in order to gain access to the fenced in backyard. Obviously, the Lafayette Police Department agreed with Defendant that Comcast workers were lying.

Perhaps, the most outrageous libel, in a pleading full of libelous statements, is Plaintiff's second unsubstantiated defamatory statement that *Comcast later received reports that Mr. O'Conner (sic) had threatened to shoot anyone who ventured on his Property without permission.* In fact, Defendant never made any such threat and does not own a gun and is an anti-gun advocate and has had numerous letters to the editor published in the Daily Camera calling for the repeal of the 2nd Amendment. In fact, Defendants supported the City of Boulder's recently enacted Assault Weapon's Ban and have testified before the Boulder City Council, Lafayette City Council and at the legislature and have attended numerous protests supporting gun regulations. It is outrageous that Plaintiff thinks that it appropriate that make unsubstantiated, baseless and libelous claims against Defendant and Plaintiff should be sanctioned accordingly.

Plaintiff's third outrageous and defamatory statement is that *Mr. O'Connor locked the gate to his background to prevent Comcast representatives from accessing the easement.* Defendant purchased the home in 2003 with the six foot fence and Defendants have always locked the gate so that their dog doesn't escape and for security reasons. Defendants are allowed to fence in their private property, put their dog in the backyard,

lock their gate to protect their dog and property and it is outrageous for Comcast too imply that Defendants are not allowed to do what they want with their private property.

Plaintiff's fourth outrageous and defamatory statement is that *Mr. O'Connor used his dog and a "Beware of Dog" sign to intimidate and deter Comcast representatives from accessing the Easement.* In 2011, Defendants purchased their blue heeler Einstein as a pet for their daughter Teagan. Since 2011, Defendants have left Einstein in the backward during the day and kenneled the dog at night. The backyard is Einstein's domain and he protects his domain. That being said, Einstein weighs 40lbs and is not a guard dog. Defendants posted Beware of Dog and No Trespassing sign on both ends of our property over three years ago. Said signs were not posted to *intimidate and deter Comcast representatives from accessing the Easement.* Defendants have an absolute right to keep their dog in the backyard, lock the gates to protect the dog and property and to post Beware of Dog and No Trespassing signs and it is outrageous for Comcast too imply that Defendants are not allowed to do what they want with their private property.


For the last several months, Comcast workers have been laying fiber optic cable throughout Defendants' neighborhood and they have become increasingly belligerent and aggressive demanding access to our private property. Defendant has repeatedly told Comcast workers that he would allow them access if they paid him $1000.00. In 1992, Defendant was in a very serious automobile car accident when he was hit head-on by a drunk driver and was hospitalized for over thirteen months; consequently, he has titanium rods in his femur and tibia. As a result, it is very difficult and sometimes impossible for

Defendant to walk up and down the steps to the backyard, unlock the gates and bring the dog which is the reason that Defendant requests payment of $1,000.00.

On October 11, 2018, Defendants' dog turned up lame and could not stand up. Defendants thought that they were going to have to put the dog down. Defendants' took Einstein to Mountain Ridge Animal Hospital and the veterinarian diagnosed him with a blunt trauma injury to the hind leg and prescribed pain medication costing Defendants $66.17. This has never happened before to Defendants' dog and coincidentally happened when Comcast workers were working in Defendants' neighborhood trying to access Defendants' private property. We believe that Comcast worker injured our dog on October 10, 2018, because our next door neighbor told us that she allowed Comcast workers into her backyard and that she observed them looking over our fence on that day.

On October 21, 2018, Defendant emailed Comcast a demand letter for $10,066.17 in compensation for the pattern of threats, harassment and intimidation and for injuring Defendants' dog and attempting to get Defendant arrested. Defendants have been contacted on social media and by telephone and in person by neighbors about how Comcast workers have threatened and intimidated residents, destroyed property and irresponsibly left gates open resulting in dogs escaping and being run over by cars. On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion

9

occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans. Is it any wonder that Defendants are afraid of Comcast?

Plaintiff has engaged in a pattern of bullying, harassment, threats and intimidation of Defendants and the Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction are simply a continuation of this unfortunate pattern. On October 17, 2018, Defendant talked to Boulder District Attorney Michael Dougherty about the bullying, harassment, threats and intimidation tactics by Plaintiff. On October 18, 2018, Defendant emailed Lafayette Mayor Berg and fellow Councilwomen Harkness and Mazza about the bullying, harassment, threats and intimidation. Also, on October 18, 2018, Lafayette police left a plat map from 1983 with a card at Defendants' residence on which Officer McDonald wrote: *These are copys (sic) of your land. If you have question call Boulder County Dispatch. (303) 441-4444.* A cursory examination of the 1983 plat map shows that Comcast does not own an easement on Defendants' private property. The only utilities listed on the 1983 plat map are Public Service Co. and Mountain States Telephone. Furthermore, a review of Defendants' deed, title as well as what is recorded at the courthouse seems to indicate that Plaintiff does not own an easement on Defendants' private property. It is important to note that there is no HOA in Defendants' subdivision. Defendants seriously doubt that Comcast can prove that they own an easement on Defendants' private property. Whether a U.S. citizen's private property rights are subordinated to commercial interests of a private company is a Federal question. This case implicated both the 4th and 5th Amendments of the U.S. Constitution. This case implicates both the 4th and 5th Amendments of the U.S. Constitution. The 4th

10

Amendment states: *The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.* The 5th Amendment further protects property, by stating: *No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.* Plaintiff's unlawful actions have deprived Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution and Plaintiff's lawsuit clearly generates Federal questions.

On December 5, 2018 at 7:00am, several people who we later learned represented Plaintiff showed up at Defendants' residence with several vehicles. Defendants did not know who they were and Defendants and their ten year old daughter were frightened, intimidated and felt threatened by this show of force. Defendants are convinced that Plaintiff has filed this frivolous lawsuit in the wrong court in order to harass, threaten and intimidate Defendants and because Comcast knows that they don't own an easement on Defendants' private property and is afraid that their threatening, intimidating and bullying tactics and unlawful actions against Defendants will cause Lafayette residents to drop Comcast. Again, Plaintiff's unlawful actions have deprived Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution and Plaintiff's lawsuit clearly generates Federal questions.

11

**WHEREFORE,** based upon the foregoing, Defendants Andrew J. O'Connor and Mary

E. Henry respectfully request that Case No: 2018CV31084 erroneously filed in District

Court, Boulder County, Colorado be removed to the United States District Court for the

District of Colorado and grant any such further relief that the Court deems just and

proper.

**Dated:** December 8, 2018

Respectfully submitted,
**ANDREW J. O'CONNOR AND MARY E. HENRY**

By:
Pro Se Defendants
Andrew J. O'Connor and Mary E. Henry
1220 W. Devonshire Court
Boulder, CO 80026
Telephone: (303) 882-1693 and (303) 919-7124
Email: oconnorandrew@hotmail.com
Email: meandgriff@gmail.com

12

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of December 2018, a true and correct copy of **NOTICE OF REMOVAL PURSUANT TO 28 U.S. C. § 1446 (a)** was emailed and/or deposited in the United States Mail, first-class postage prepaid and addressed to:

Ballard Spahr
**Attn: J. Matthew Thornton**
1225 17th Street, Suite 2300
Denver, CO 80202
Tel: (303) 292-2400
Fax: (303) 296-3956
Email: thorntonj@ballardspahr.com
*Attorneys for Plaintiff*

**ANDREW J. O'CONNOR**

_____
Andrew J. O'Connor