| | |
|---|---|
| DISTRICT COURT, CITY AND COUNTY OF BOULDER, COLORADO<br>1777 6th Street<br>Boulder, Colorado 80302 | |
| **Plaintiff:** COMCAST OF COLORADO I, LLC, a Colorado limited liability corporation<br><br>v.<br><br>**Defendants:** ANDREW J. O'CONNOR, an individual, and MARY E. HENRY, an individual | ▲    COURT USE ONLY    ▲ |
| **Attorneys for Comcast of Colorado I, LLC**<br>David M. Stauss, #40769<br>J. Matthew Thornton, #48803<br>Ballard Spahr LLP<br>1225 17th Street, Suite 2300<br>Denver, Colorado 80202-5596<br>Telephone: (303) 296-2400<br>Facsimile: (303) 296-3956<br>Email: staussd@ballardspahr.com<br>Email: thorntonj@ballardspahr.com | Case No. 2018CV031084<br><br>Division: 5 |
| **MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** | |

Pursuant to C.R.C.P. 65, Plaintiff Comcast of Colorado I, LLC ("Comcast"), by and through undersigned counsel, hereby submits this Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion"), as supported by Plaintiff's Verified Complaint and the exhibits attached thereto. In support of the Motion, Comcast states as follows:

### CERTIFICATION PURSUANT TO COLO.R.CIV.P. 121, § 1-15(8)

On November 27, 2018, Comcast served a copy of the Verified Complaint and a copy of this Motion on Defendants. Defendants have not yet entered an appearance in this case, and therefore undersigned counsel has not been able to confer with them regarding the relief requested. Undersigned counsel anticipates that Defendants will oppose the relief requested.

## PRELIMINARY STATEMENT

Comcast is a cable television company that provides cable service to residents of the City of Lafayette in Boulder County, Colorado, pursuant to a cable franchise granted by the City. In 2016, the City of Lafayette renewed its franchise agreement with Comcast pursuant to the Cable Communications Policy Act of 1984, 47 U.S.C. § 541 (the "Cable Act"). The Cable Act and the franchise authorize Comcast to construct and operate a cable system in the public rights of ways and compatible easements located in the City. Comcast is currently engaged in a project to bring fiber optic infrastructure deeper into Lafayette neighborhoods, expand Comcast's broadband capacity throughout the City, increase its network reliability, and support next-generation speeds for Lafayette residents and businesses, which Comcast collectively refers to as the "Advanced Fiber Network Project."

Defendants Andrew J. O'Connor and Mary E. Henry reside in the City of Lafayette, in a subdivision called Churchill Pointe. Decades ago, the Churchill Pointe Subdivision dedicated easements to the City of Lafayette "for the perpetual use by the public," as set forth in a recorded final plat of the subdivision. Defendants' property, as shown in the final plat, is encumbered by a five foot easement along the Property's rear and side lot lines.

In October 2018, Comcast representatives requested permission to access the easement on the Defendants' property for the purpose of accessing its existing cable facilities in that easement and updating that plant with fiber optic facilities. Despite being advised by the City that Comcast has a legal right to access the easements on Lafayette residents' properties, Defendants refused to allow Comcast representatives to enter their backyard where the easement at issue is located. After the dispute escalated, the Lafayette Police Department appeared with

2

Comcast at Defendants' house and asked Defendants to allow Comcast access to the easement. Defendants again refused.

For nearly a month now, Defendants have continued to interfere with Comcast's legal right to access the easement – using a locked gate, their dog, and threats of violence – and are now demanding for Comcast to pay them over $10,000 to access the easement. Defendants' obstructionist actions are not only unlawful, but they are preventing Comcast from completing a significant project in Lafayette, which could result in hundreds of surrounding residents suffering outages that Comcast will be unable to address. Therefore, Comcast seeks an injunction from this Court enjoining Defendants from: (1) denying Comcast access to the easement on the Property; and (2) interfering with Comcast's installation, construction, maintenance, or repair of cable system facilities in the easement.

## BACKGROUND

### A. The Property and At–Issue Easement

Mr. O'Connor resides at 1220 Devonshire Court, Lafayette, Colorado 80026 (the "Property"). Verified Compl. at p. 2, ¶ 5. The Property is owned by Mary E. Henry who, based on information and belief, is Mr. O'Connor's wife. *Id.* ¶ 6.

The Property is located in the Churchill Pointe Subdivision. *Id.* ¶ 7; *see also* Ex. 1 (Churchill Pointe Subdivision Filing 1 Plat, Page 2 of 2). In 1983, the Churchill Pointe Subdivision "grant[ed] to the City of Lafayette, State of Colorado, for the perpetual use by the public, the streets, easements and tracts" shown or described in the Churchill Pointe Subdivision Final Plat (the "Final Plat"). *Id.* ¶ 8; *see also* Ex. 2 (Dedication, Churchill Pointe Subdivision Filing 1 Final Plat, Page 1 of 2).

As set forth in the Final Plat, each lot in the Churchill Pointe Subdivision has "a five foot utility easement along the rear lot line, and five foot easement along the side lot lines when shown." Verified Compl. at p. 2, ¶ 9; Ex. 2. As illustrated in Table 1, the Final Plat shows a five foot easement along the Property's rear lot line and side lot line (the "Easement"). Verified Compl. ¶ 10; *see also* Ex. 1 (highlights added). Defendants live on the parcel shaded grey, and the area shaded green is the five foot easement running along the Property. Verified Compl. at p. 2, ¶ 10. Comcast currently has cable facilities located in the Easement and wants to access those facilities to complete its upgrade project. *See* Verified Compl. ¶ 32.

Table 1: The Easement



### B. Comcast Holds a Cable Franchise from the City of Lafayette

Cable companies like Comcast are required by federal law to obtain cable franchises from municipalities for permission to operate a cable system. *See generally*, Cable Communications Policy Act of 1984, 47 U.S.C. § 541 ("Cable Act"). Comcast and its predecessors-in-interest have held a cable franchise granted by the City of Lafayette since at least February 1, 1983. Verified Compl. at p. 3, ¶ 7. Section 621(a)(2) of the Cable Act provides that: "Any franchise shall be construed to authorize the construction of a cable system over public

rights-of-way, and through easements, which are within the area to be served by the cable system and which have been dedicated for compatible uses...." 47 U.S.C. §541(a)(2).

On December 16, 2016, the City of Lafayette (the "City") and Comcast renewed for the second time the Cable Franchise Agreement (the "Agreement"). Verified Compl. at p. 3, ¶ 8; Ex. 3 (Cable Franchise Agreement). The Agreement authorizes Comcast to access "Rights-of-Way" located in the City to "erect, install, construct, replace, reconstruct, and retain in, on, over, under, upon, across, and along the Rights-of-Way within the City such wires, cables, conductors, ducts, conduits, vaults, manholes, amplifiers, pedestals, attachments and other property and equipment as are necessary to the operation of a Cable System within the City." *See* Agreement §§ 1.36, 2.1, 2.2. The term "Rights-of-Way" includes any easement that has been established within City limits. *Id.* § 1.36.

In addition to authorizing access to Rights-of-Way within the City, the Agreement also codifies Comcast's *right* to "perform all construction in the Rights-of-Way." *See id.* § 10.1.

To access the Rights-of-Way, Comcast must first "give notice to private property owners of work on or adjacent to private property in accordance with City's Customer Service Standards[.]" *Id.* § 10.13. The City's Customer Service Standards require Comcast to provide "reasonable notice" prior to entering upon private premises, with a description of the work to be performed. *Id.*, Exhibit A § 33.3(c)(7)(iii). The Agreement does not require Comcast to obtain permission from the property owners or tenants prior to accessing Rights-of-Way, even if located on private property. *See generally* Agreement.

C. **The City Notifies Residents of Comcast's Advanced Fiber Network Project**

In or around mid-2018, the City notified its residents of Comcast's plan to launch an "Advanced Fiber Network Project" (the "Project"), starting in late July 2018 and scheduled to

5

end in early November 2018. Verified Compl. ¶ 14; CITY OF LAFAYETTE, *Comcast Advanced Fiber Network Project*, https://www.cityoflafayette.com/2190/Comcast-Advanced-Fiber-Network-Project (last visited Nov. 19, 2018). As noted by the City, Comcast designed the Project to "bring fiber optic infrastructure deeper into Lafayette neighborhoods which will expand Comcast's broadband capacity throughout the City, further increase its network reliability, and support next-generation speeds for Lafayette residents and businesses." *Id.*

The City advised residents that the Project would involve "a combination of construction in the public right-of-way and public utility easements, installation of new and upgraded equipment and changes to the network architecture" and made it clear that residents are "legally required" to allow 24-hour access to public right-of-ways and public utility easements if located on their properties and to "expect construction crews in the neighborhoods working in both front, side and backyards." *Id.* ¶ 15. Property owners with pets were specifically asked to "make sure [their] pets are safe and secure during the window provided by Comcast." *Id.*

### D. Defendants Block Comcast's Access to the Easement

On October 17, 2018 – several days after Comcast representatives hung a door tag on the Property providing notice that it would need access to the Easement – workers knocked on Defendants' door and politely asked to be let into the backyard. Verified Compl. ¶ 16. Mr. O'Connor refused to provide access. *Id.* ¶ 17.

Later that day, a supervisor approached Mr. O'Connor and again asked for access to the Easement. *Id.* ¶ 18. Mr. O'Connor again refused. *Id.* As the supervisor and workers began leaving the Property, Mr. O'Connor got into his truck, pulled out of his driveway, and accelerated up onto the sidewalk where a Comcast representative was walking back to his

vehicle. *Id.* ¶ 19. The worker, an older gentlemen, was not injured during the incident, but he was visibly upset and shaken up by it. *Id.*

Comcast later received reports that Mr. O'Conner had threatened to shoot anyone who ventured on his Property without permission. *Id.* ¶ 20.

To avoid further escalating the situation with Mr. O'Connor and to ensure the safety of its workers, Comcast representatives requested that the Lafayette Police Department accompany Comcast representatives who were attempting to gain access to the Easement. *Id.* ¶ 21. The Lafayette Police Department (who, incidentally, agreed that Comcast has a right to access the Easement) explained to Mr. O'Connor that Comcast had an easement on the Property and that he needed to allow them access to it. *Id.* ¶ 22. Mr. O'Connor continued to refuse access to the Easement.

On October 18, 2018, Mr. O'Connor posted a sign on the front door of the Property with his and his wife's signature, stating: "Access denied to our property or backyard at 1220 W. Devonshire Ct. Lafayette, CO 80026." *Id.* ¶ 23.

### E. Defendants Demand Comcast Pay $10,066 to Access the Easement

On October 21, 2018, Mr. O'Connor sent an email to Comcast (as well as a select number of public officials and media outlets) seeking $10,066.17 in damages for alleged "harassment, filing a false police report and trespass to private property and injuries to dog." *Id.* ¶ 24; Ex. 4 (Oct. 21 O'Connor Email). Much of Mr. O'Connor's email is fantastical, but parts of it confirm important details about the October 17 incident and Mr. O'Connor's actions in the days that followed, including that:

- Comcast representatives made numerous requests to access the Easement, all of which Mr. O'Connor rebuffed;

7

- Mr. O'Connor locked the gate to his backyard to prevent Comcast representatives from accessing the Easement;

- Mr. O'Connor used his dog and a "Beware of Dog" sign to intimidate and deter Comcast representatives from accessing the Easement;

- Mr. O'Connor demanded money from Comcast for access to the Easement, starting at $1,000 and increasing to over $10,000;

- Mr. O'Connor is denying Comcast access to the Easement, at least in part, because he mistakenly believes that Comcast does not have an easement on the Property;

- Mr. O'Connor mistakenly believes that, even if Comcast has an easement, he has the right to deny them access to it;

- Comcast appropriately escalated the situation, first by having supervisors speak with Mr. O'Connor, and then, after being denied access to the Easement numerous times, contacting the Lafayette Police Department, whose instruction to allow Comcast access to the Easement Mr. O'Connor ignored; and

- Mr. O'Connor believes that the issue of whether Comcast has an easement should be decided by a court.

*Id.* Mr. O'Connor sent an identical message to Comcast's Legal Division on October 22, 2018. Verified Compl. ¶ 25; Ex. 5 (Oct. 22 O'Connor Letter).

On October 22, 2018, Daniel Grisim, a Senior Manager for Security at Comcast, emailed Mr. O'Connor about his complaint, asking for an opportunity to discuss the alleged incident with him. Verified Compl. ¶ 26; Ex. 6 (Oct. 22 Email from Grisim to O'Connor). Mr. O'Connor declined Mr. Grisim's request and instead reiterated his demand for Comcast to pay him $10,066.17, stating that, if Mr. Grisim "[did] not have settlement authority to pay me $10,066.17 then we will have no further communications." *Id.* ¶ 27.

Mr. Grisim tried contacting Mr. O'Connor once more, to explain the reasons Comcast needed access to the Property, which include addressing service issues of Mr. O'Connor's surrounding neighbors, but Mr. O'Connor asked Mr. Grisim not to contact him again. *Id.* ¶ 28.

8

On October 23, 2018, Mr. O'Connor sought a restraining order against Mr. Grisim and Comcast's workers. *Id.* ¶ 29. The Court denied Mr. O'Connor's motion the same day it was filed. *Id.*; Ex. 7 (Oct. 23 Order).

On or around October 25, Mr. O'Connor appeared on television to publicly discuss his dispute with Comcast, characterizing the company as "an evil empire" and calling for the public to "stand up" against Comcast. Verified Compl. ¶ 30; Russel Haythorn, *Lafayette homeowner tells Comcast to buzz off over new fiber optics line*, DENVER7 (Oct. 25, 2018), https://www.thedenverchannel.com/news/contact7/lafayette-homeowner-tells-comcast-to-buzz-off-over-new-fiber-optics-line. Mr. O'Connor also reportedly took to social media to incite protest from other City residents. Verified Compl. ¶ 30.

On November 7, Comcast made a final attempt to access the Easement, but Mr. O'Connor once again refused to let Comcast onto the Property. *Id.* ¶ 31.

As a result of the Defendants' conduct, Comcast has been forced to file this Motion for preliminary injunctive relief to prevent Defendants from continuing to block Comcast's right to access the Easement.

## ARGUMENT

The Defendants' conduct in this case violates well-established federal law and policy, deprives Comcast of its rights under the cable franchise agreement granted by the City, harms the Defendants' neighbors by denying them access to the advanced services Comcast would provide upon completion of the upgrade project, and causes irreparable injury to Comcast through the impairment of its ability to provide services to customers. In comparison, there is no harm to Defendants in allowing the project to move forward because Comcast already has cable facilities

located in the Easement on Defendants' property and the upgrade at issue would take only a couple hours and not require disruptive work in the yard.

The factors a party must demonstrate to obtain a temporary restraining order or preliminary injunction are the same and each is satisfied in this case: "(1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief; (3) lack of a plain, speedy, and adequate remedy at law; (4) no disservice to the public interest; (5) balance of equities in favor of the injunction; and (6) preservation by the injunction of the status quo pending a trial on the merits." *Gitlitz v. Bellock*, 171 P.3d 1274, 1278 (Colo. App. 2007); *see also State v. Hall*, 2014 WL 3382505, at *2 (Colo. Dist. Ct. July 10, 2014) (stating that factors for evaluating temporary restraining order and preliminary injunction are same). Further, Colorado Rule of Civil Procedure 65(f) makes clear that preliminary relief need not simply restrain actions—a court may also order mandatory relief. Mandatory relief is especially appropriate when a defendant's conduct interferes with easement rights. *See, e.g.*, *Upper Platte & Beaver Canal Co. v. Riverview Commons Gen. Improvement Dist.*, 250 P.3d 711, 715 (Colo. App. 2010) ("[C]ourts usually grant the easement owner injunctive relief when it is desired and when the defendant's conduct in fact interferes with the easement rights.") (internal quotations and citations omitted).

I.  **The Factors to be Considered Before Issuing a Temporary Restraining Order and Preliminary Injunction Fall Heavily in Comcast's Favor.**

    *1.  Comcast Is Likely to Succeed on the Merits of Its Claims.*

Comcast's verified complaint asserts claims against Defendants for violating the Cable Act and declaratory judgment of Comcast's easement rights. Comcast will succeed on both of these claims.

A.  *Comcast Is Likely to Succeed on Its Cable Act Claim.*

Section 621(a)(2) of the Cable Act provides, in relevant part, that:

(2) Any franchise shall be construed to authorize the construction of a cable system over public rights-of-way, and through easements, which are within the area to be served by the cable system and which have been dedicated for compatible uses, except that in using such easements the cable operator shall ensure –

(A) that the safety, functioning, and appearance of the property and the convenience and safety of other persons not be adversely affected by the installation or construction of facilities necessary for a cable system;

(B) that the cost of the installation, construction, operation, or removal of such facilities be borne by the cable operator or subscriber, or a combination of both; and

(C) that the owner of the property be justly compensated by the cable operator for any damages by the installation, construction, operation, or removal of such facilities by the cable operator.

47 U.S.C. § 541(a)(2). The Cable Act defines "franchise" as "an initial authorization, or renewal thereof . . . issued by a franchising authority, whether such authorization is designated as a franchise, permit, license, resolution, contract, certificate, agreement, or otherwise, which authorizes the construction or operation of a cable system."

Comcast is the holder of a franchise under the Cable Act. Indeed, the franchising authority in this case, the City of Lafayette, just recently renewed Comcast's franchise, in December 2016. Comcast's franchise authorizes it to access Right-of-Ways in the City to construct or operate its cable system. *See* Agreement §§ 1.36, 2.1, 2.2, 10.1. "Rights-of-Way" includes easements that have been established within City limits. *Id.* § 1.36.

As illustrated in Table 1 above, the Final Plat of Defendants' subdivision shows a five foot easement along the Property's rear lot line and side lot line (the "Easement"). Comcast has made numerous efforts to access the Easement, but Defendants continue to deny access. In these

11

kinds of cases, where a cable company has been denied access to an easement, courts have held that the Cable Act provides "an implied right of action . . . to compel access to compatible easements." *See, e.g., United Cable Television v. Louis J. Eyde Ltd. Family Partnership*, Case No. L89-30103, 1989 U.S. Dist. LEXIS 18154, at *3, 5 (W.D. Mich. Nov. 20, 1989); *Centel Cable Television Co. v. Admiral's Cover Assoc.*, 835 F.2d 1359, 1362 (11th Cir. 1988) (holding that Congress intended to "permit a cable franchise to enforce its right to lay cable along utility easements through the courts"). Because Defendants are interfering with Comcast's right to access the Easement, Comcast is likely to succeed on its Cable Act claim against Defendants.

B. *Comcast Is Likely to Succeed on the Declaratory Judgment Claim.*

"Colorado law recognizes declaratory relief in easement disputes." *Upper Platte & Beaver Canal Co.*, 250 P.3d at 715 (citing a list of supporting cases). In this case, Comcast seeks a declaration of the respective rights and duties of Defendants and Comcast related to the Easement. Specifically, Comcast seeks a declaration that: (1) Comcast has an easement on the Property; and (2) Defendants are unlawfully interfering with Comcast's right to access the easement. Under well-established law, both issues fall in Comcast's favor.

i. *Comcast has an easement on the Property.*

Defendants' property is located in the Churchill Pointe Subdivision. In 1983, the Churchill Pointe Subdivision dedicated easements to the City of Lafayette "for the perpetual use by the public," as set forth in a recorded final plat of the subdivision. As shown in the final plat (*see* Table 1 above), Defendants' property is encumbered by a five foot easement along the Property's rear and side lot lines.

Comcast's cable franchise authorizes it to access all "Rights-of-Way" located in the City to "erect, install, construct, replace, reconstruct, and retain in, on, over, under, upon, across, and

along the Rights-of-Way within the City such wires, cables, conductors, ducts, conduits, vaults, manholes, amplifiers, pedestals, attachments and other property and equipment as are necessary to the operation of a Cable System within the City." *See* Agreement §§ 1.36, 2.1, 2.2. The term "Rights-of-Way" includes all easements established within City limits – including the easement on Defendants' property. *Id.* § 1.36. Thus, Comcast will likely prevail on its request for a declaratory judgment finding that Comcast has an easement on the Property.

> ii. *Defendants are unlawfully interfering with Comcast's right to access the easement.*

Under Colorado law, the servient owner of an easement "may not unreasonably interfere with the enjoyment of the easement by the easement holder." *See, e.g.*, *Upper Platte & Beaver Canal Co.*, 250 P.3d at 715; *see also Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1241 (Colo. 1998). Unreasonable interference with an easement undoubtedly includes preventing an easement holder from traveling to and from an easement. *See Centel Cable Television Co. v. Thomas J. White Dev. Corp.*, 902 F.2d 905, 909 (11th Cir. 1990) (affirming district court decision holding that "[w]ithout the right of passage to and from the utility easements, . . . the holder of the easement cannot fully enjoy the easement"). In this case, Defendants are not just interfering with Comcast's right to access the easement, they are <u>excluding</u> Comcast from it altogether. Thus, Comcast will likely prevail on its request for a declaratory judgment finding that Defendants are unlawfully interfering with Comcast's right to access the easement.

### 2. *Comcast Will Suffer Immediate and Irreparable Harm.*

Defendants' refusal to provide Comcast access to the Easement has and will continue to cause Comcast to suffer immediate and irreparable harm.

13

Defendants' actions have resulted in delays to Comcast's construction efforts in the area. As a result of these delays, Comcast has incurred unnecessary expenses, such as sending employees to work with the local police department to try to resolve the dispute and the legal expenses associated with the filing of the complaint and this Motion, and will continue to incur additional expenses until Comcast is allowed access to the Easement.

Moreover, Comcast currently has cable system facilities installed in the Easement, including a pedestal in the Defendants' backyard. Thus, not only does Comcast need access to those cable systems facilities for purposes of completing the Project, it also needs the ability to access the Easement for standard maintenance and servicing outage calls. Without the ability to access the Easement, hundreds of surrounding residents could suffer outages and Comcast will be unable to address the issue. For a company like Comcast, who faces constant competition for video, phone, and Internet services it delivers over the cable system, an inability to deliver higher levels of service to its customers and prospective customers in that neighborhood could and likely already has caused irreparable harm to Comcast's reputation and ability to retain or sign up new customers for advanced services provided over the upgraded cable system.

Numerous federal courts have recognized the irreparable injury cable operators suffer when wrongfully denied access to easements. *Thomas J. White Dev. Corp.*, 902 F.2d at 910-11 (loss of good will, loss of competitive advantage with other cable operators, loss of subscribers, and reluctance of subscribers to switch services amounted to irreparable harm to cable operator); *Centel Cable Television Co. v. Burg & DiVosta Corp.*, 712 F.Supp. 176, 178 (S.D. Fla. 1988) ("If preliminary relief is not granted, Centel will incur indeterminable additional costs, will lose indeterminable customers, revenues and profits, and will suffer irreparable

14

damage to its reputation and good will."); *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994). Absent a temporary restraining order in this case, Comcast will incur indeterminable additional costs, will lose indeterminable customers, revenues and profits, and will suffer irreparable damage to its reputation and good will.

### 3. *Comcast Has No Plain, Speedy, and Adequate Remedy at Law.*

As detailed above, Defendants' continued interference with Comcast's right to access the Easement has caused and will continue to cause Comcast to incur injuries that cannot be fully be compensated by monetary damages, including any damage to its reputation and good will caused by delays in the completion of the Project or Comcast's current inability to effectively address outages that surrounding residents might experience. Comcast will continue to suffer irreparable damages for months, if not years, if required to fully litigate this case before a resolution is reached. Therefore, Comcast has no plain, speedy, and adequate remedy at law.

### 4. *The Public Interest Is Served by Granting Comcast Access to the Easement.*

The express purpose of Cable Act is, in part, to "assure that cable systems are responsive to the needs and interests of the local community." 47 U.S.C. § 521(2). By enacting the Cable Act, Congress "declared that use of easements dedicated for compatible uses by cable companies is in the public interest." *United Cable Television*, 1989 U.S. Dist. LEXIS at *13-14. The legislative history of the Cable Act informs us that Congress intended to authorize the cable operator to "piggyback" on easements "dedicated for electric, gas or other utility transmission." H.R.Rep. No. 934, 98th Cong., 2d Sess. 59, *reprinted in* 1984 U.S. Code Cong. & Admin. News 4655, 4696. "In adopting this legislation, the Committee has endeavored to create an environment in which cable will flourish, providing all Americans with access to a technology

15

that will become an increasingly important part of our national communications network." *Id.* at 4657. The rights granted to cable operators under the Cable Act ensure that no one property owner can obstruct the rest of the public form having access to the communications services provided over cable systems.

In this case, Defendants have acted contrary to the public interest by preventing Comcast from accessing the Easement, putting their own interests before their neighbors, many of whom will be deprived of fiber optic facilities until this dispute is resolved. An order restoring Comcast's legal right to access the easement would therefore serve the public interest, empowering Comcast to assure its cable system is responsive to the needs and interests of Lafayette residents. *See id.*

### 5. *The Balance of Equities Falls in Favor of Granting the Injunction.*

The irreparable nature of the damage to Comcast indicates that the threatened injury to it outweighs that injury which an injunction may cause to Defendants. Indeed, given the nature of the access Comcast seeks – which will not involve any underground work and will only take 1 to 2 hours to complete – Defendants stand to suffer no damages if the injunction is granted.

In any event, as set forth in the Agreement, Comcast is obligated to "promptly commence restoration of private property" in the event its work causes damage. Agreement § 10.16(d). Defendants are also accorded protection under the Cable Act, which places limits upon the manner of Comcast's access to and work on Defendants' property. *See* 47 U.S.C. § 541(a). Indeed, under Section 621 (a)(2)(C) of the Cable Act, as well under the common law, Defendants have a right to seek compensation for any harm caused by Comcast. 47 U.S.C. § 541(a)(2)(C).

Moreover, the illegal activities of Defendants are not entitled to protection by this Court, since the Defendants "ha[ve] no intrinsic right to violate the federal communications laws."

16

*American Television and Communications Corp. v. Floken*, 629 F. Supp. 1462, 1473 (M.D. Fla. 1986). Thus, "[d]efendants will suffer no harm if an injunction is issued which simply requires them to obey the law." *See Cox Cable Cleveland Area v. King*, 582 F. Supp. 376, 381 (N.D. Ohio 1983) (citing *Home Box Office, Inc. v. Pay TV of Greater N.Y., Inc.*, 467 F. Supp. 525, 529 (E.D.N.Y. 1979)); *Storer Communs v. Mogel*, 625 F. Supp. 1194, 1203 (S.D. Fla. 1985).

Accordingly, the balance of equities falls heavily in favor of this Court granting an injunction against Defendants.

### 6. *Preventing Defendants from Interfering with the Easement Will Preserve the Status Quo.*

For months, Comcast has been diligently working to complete its Project in the City of Lafayette, and Lafayette residents have enabled Comcast to do so by not interfering with access to Rights-of-Way in the City, including easements on private property. Defendants, on the other hand, have unlawfully interfered with Comcast's legal right to access the Rights-of-Way on their property, stalling the project and altering the status quo.

Comcast is requesting for this Court to restore the status quo by enjoining Defendants from unlawfully interfering with Comcast's right to access Rights-of-Way. Courts across the country have granted, or affirmed the granting of, preliminary injunctive relief to cable operators whose easement rights have been interfered with while attempting to construct or repair cable systems. *See, e.g., Thomas J. White Dev. Corp.*, 902 F.2d at 909; *Burg & DiVosta Corp.*, 712 F.Supp. at 178; *United Cable Television of Mid-Michigan*, 1989 U.S. Dist. LEXIS at *13-14; *Cable TV Fund 14-A v. Property Owners Ass'n Chesapeake Ranch Estates*, 706 F.Supp. 422 (D. Md. 1989). This case should be no exception.

## II. Comcast's Bond Should Be Nominal

Under Rule 65(c), "[n]o restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The bond is subject to the discretion of the trial court and must bear "a reasonable relationship to the potential costs and losses occasioned by a preliminary injunction that has been improperly granted." *Amtel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 796-97 (Colo. App. 2001). In this case, Comcast seeks access to the Easement to do above-ground work, which should take only 1-2 hours complete. Accordingly, the bond should be set at no more than $500.

## CONCLUSION

For the reasons set forth above, Plaintiff Comcast of Colorado I, LLC respectfully requests that the Court enter a Temporary Restraining Order and Preliminary Injunction enjoining Defendants, including any of their agents, attorneys, or any other person who is in active concert or participation with them, from:

(1) Denying Comcast access to the easement on the Property; and

(2) Interfering with Comcast's installation, construction, maintenance, or repair of cable system facilities in the easement.

DATED: November 27, 2018.

                BALLARD SPAHR LLP

                By: *s/ David M. Stauss*
                    David M. Stauss, #40769
                    J. Matthew Thornton, #48803

                **ATTORNEYS FOR PLAINTIFF COMCAST OF COLORADO I, LLC**