FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2018 DEC 11 AM 8:28
JEFFREY P. COLWELL
CLERK
BY_____DEP. CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 18-CV-03158

COMCAST OF COLORADO I LLC,

   Plaintiff,

v.

ANDREW J. O'CONNOR and MARY E. HENRY, individually,

   Defendants.

---

## DEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION PURSUANT TO RULE 65

---

**COMES NOW,** Defendants Andrew J. O'Connor and Mary E. Henry ("Defendants") and files Defendants' Motion for a Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 and as grounds therefore states as follows.

### PRELIMINARY STATEMENT

Plaintiff has embarked upon a campaign of intimidation, bullying, harassment, threats, character assassination and defamation against Defendants who are simply trying to protect their private property rights and health, safety and welfare. Plaintiff is a multi-billion dollar out of State Corporation who is abusing legal process and attempting to use the courts in order to run over Defendants and deny them their private property rights and right to live in a safe and healthy home environment. Plaintiff has filed a frivolous complaint and motion for temporary restraining order and preliminary injunction in order to bully and intimidate Defendants and damaged Plaintiffs. On November 21, 2018, Plaintiff filed a frivolous Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction. On November 29, 2018, Plaintiff's process server left

1

summons and complaint on Defendants' steps with "11/29/18, 710 AM, illegible initials and served by refusal" handwritten on the top of the summons. Plaintiff failed to personally serve Defendants pursuant to C.R.C.P. 4 (e) (1) and (k). On December 3, 2018, Defendants filed Entry of Limited Appearance to Contest Service of Process and Motion to Quash Service of Process which is pending before the Court. It is well established in Colorado that service of summons in the cause is void, and a judgment entered in the absence of the defendant and upon such service is a nullity. *Toenniges v. Drake*, 7 Colo. 471, 4 P. 790 (1884).

In both Plaintiff's Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction, Plaintiff's make numerous material misrepresentations and several unsubstantiated defamatory statements about Defendant O'Connor. Plaintiff's material misrepresentations and unsubstantiated defamatory statements include, but are not limited to the following:

  a. *As the supervisor and workers began leaving the Property, Mr. O'Connor got into his truck, pulled out of his driveway, and accelerated up onto the sidewalk where a Comcast representative was walking back to his vehicle.* (Verified Complaint, #19, pg.4)
  b. *Comcast later received reports that Mr. O'Conner (sic) had threatened to shoot anyone who ventured on his Property without permission.* (Verified Complaint, #20, pg. 5)
  c. *Mr. O'Connor locked the gate to his background to prevent Comcast representatives from accessing the easement.* (Verified Complaint, pg. 5)
  d. *Mr. O'Connor used his dog and a "Beware of Dog" sign to intimidate and deter Comcast representatives from accessing the Easement.* (Verified Complaint, pg. 5)

The first outrageous and defamatory statement is that *As the supervisor and workers began leaving the Property, Mr. O'Connor got into his truck, pulled out of his driveway, and accelerated up onto the sidewalk where a Comcast representative was walking back*

2

*to his vehicle.* In fact, Defendant O'Connor did not drive onto the sidewalk and does not own a truck. On October 17, 2018, Comcast workers knocked on Defendants' door three times demanding access to our backyard and three times Defendant O'Connor told them no and requested $1000.00 to allow them access to our backyard. The last two Comcast workers that knocked on our door told Defendant O'Connor that they were supervisors and that they had an easement giving them a legal right to access the backyard. Defendant O'Connor told them that he had done some legal research and believed that Comcast does not own an easement on our property. Even if Comcast owned an easement, which Defendants don't believe that they do, Defendants believe that they have an absolute right to request payment to access our private property. The last worker that Defendant O'Connor spoke with became very angry and said that he was going to call the police. Defendant O'Connor left to run some errands and when he returned he saw two Lafayette Police Department vehicles parked in front of our home. Two police officers approached Defendant O'Connor and questioned him and told him that a Comcast worker called them and reported that Defendant O'Connor had swerved toward the worker with his car. Defendant O'Connor told them that the Comcast worker lied and that he had not swerved toward anyone. The female police officer said that the Comcast worker was very adamant that Defendant O'Connor had swerved toward him. Defendant O'Connor told the police officer that he was just as adamant that he did not swerve toward the worker and that he was lying. The police officer then told Defendant O'Connor that she didn't see what happened and that it was a case of "he said, she said." Defendant O'Connor told the police officer that the Comcast workers were angry that he wanted to charge them to go onto our property and had lied trying to get him arrested in order to turn a civil dispute into a criminal matter. On October 17, 2018, Comcast workers committed serious misconduct including harassment and filing a false police report against Defendant O'Connor with the Lafayette Police Department. In fact, on October 17, 2018, Comcast used the Lafayette Police Department to further harass and intimidate me in order to gain access to our fenced in backyard. Obviously, the Lafayette Police Department agreed with Defendant O'Connor that Comcast workers were lying.

Perhaps, the most outrageous libel, in a pleading full of defamatory statements, is Plaintiff's second unsubstantiated libelous statement that *Comcast later received reports that Mr. O'Conner (sic) had threatened to shoot anyone who ventured on his Property without permission.* In fact, Defendant never made any such threat and does not own a gun and has had numerous letters to the editor published in the Daily Camera calling for the repeal of the 2nd Amendment. In fact, Defendants supported the City of Boulder's recently enacted Assault Weapon's Ban and have testified before the Boulder City Council, Lafayette City Council and at the legislature and have attended numerous protests supporting gun regulations. It is outrageous that Plaintiff thinks that it appropriate that make this unsubstantiated, baseless and libelous claim against Defendant O'Connor and Plaintiff should be sanctioned accordingly.

Plaintiff's third outrageous and defamatory statement is that *Mr. O'Connor locked the gate to his background to prevent Comcast representatives from accessing the easement.* Defendant purchased the home in 2003 with the six foot fence and Defendants have always locked the gate so that their dog doesn't escape and for security reasons. Defendants are allowed to fence in their private property and lock their gate and it is outrageous for Comcast too imply that Defendants are not allowed to do what they want with their private property.

Plaintiff's fourth outrageous and defamatory statement is that *Mr. O'Connor used his dog and a "Beware of Dog" sign to intimidate and deter Comcast representatives from accessing the Easement.* In 2011, we purchased our blue heeler Einstein as a pet for our daughter. Since 2011, we have left Einstein in the backward during the day and he is kenneled at night. The backyard is Einstein's domain and protects his domain. That being said, Einstein is not a guard dog. Defendants posted Beware of Dog and No Trespassing sign on both ends of our property over three years ago. Said signs were not posted to *intimidate and deter Comcast representatives from accessing the Easement.* Defendants have an absolute right to keep a dog in the backyard and post Beware of Dog and No Trespassing signs and it is outrageous for Comcast too imply that Defendants are not allowed to do what they want with their private property.

For the last several months, Comcast workers have been laying fiber optic cable throughout Defendants' neighborhood and they have become increasingly belligerent and aggressive demanding access to our private property. Defendant O'Connor has repeatedly told Comcast workers that he would allow them access if they paid him $1000.00. Defendant O'Connor was in a very serious automobile car accident when he was hit head-on by a drunk driver and was hospitalized for over thirteen months; consequently, he has titanium rods in his femur and tibia. As a result, it is very difficult and sometimes impossible for Defendant O'Connor to walk up and down the steps to the backyard, unlock the gates and bring the dog.

On October 11, 2018, Defendants' dog turned up lame and could not stand up. Defendants thought that they were going to have to put the dog down. Defendants' took Einstein to Mountain Ridge Animal Hospital and the veterinarian diagnosed him with a blunt trauma injury to the hind leg and prescribed pain medication costing Defendants $66.17. This has never happened before to Defendants' dog and coincidentally happened when Comcast workers were working in Defendants' neighborhood trying to access Defendants' private property. We believe that Comcast worker injured our dog on October 10, 2018, because our next door neighbor told us that she allowed Comcast workers into her backyard and that she observed them looking over our fence on that day.

On October 21, 2018, Defendant O'Connor emailed Comcast a demand letter for $10,066.17 in compensation for the pattern of threats, harassment and intimidation and for injuring Defendants' dog and attempting to get Defendant O'Connor arrested. Defendants have been contacted on social media and by telephone and in person by neighbors about how Comcast workers have threatened and intimidated residents, destroyed property and left gates open resulting in dogs escaping and being run over by cars. On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion

occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans. Is it any wonder that Defendants are afraid of Comcast?

Plaintiff has engaged in a pattern of harassment, threats and intimidation of Defendants and the Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction are a continuation of said pattern. On October 17, 2018, Defendant O'Connor talked to Boulder District Attorney Michael Dougherty about the harassment, threats and intimidation tactics by Plaintiff. On October 18, 2018, Defendant O'Connor emailed Lafayette Mayor Berg and fellow Councilwomen Harkness and Mazza about the harassment, threats and intimidation. Also, on October 18, 2018, Lafayette police left a plat map from 1983 with a card at Defendants' residence on which Officer McDonald wrote: *These are copys (sic) of your land. If you have question call Boulder County Dispatch. (303) 441-4444.* A cursory examination of the 1983 plat map shows that Comcast does not own an easement on Defendants' private property. The only utilities listed on the 1983 plat map are Public Service Co. and Mountain States Telephone. Furthermore, a review of Defendants' deed, title as well as what is recorded at the courthouse seems to indicate that Plaintiff does not own an easement on Defendants' private property. It is important to note that there is no HOA in Defendants' subdivision. Defendants seriously doubt that Comcast can prove that they own an easement on Defendants' private property.

On December 5, 2018 at 7:00am, Plaintiff showed up at Defendants' residence with three vehicles and an Infinity truck and with at least people pounding on our front door in an effort to harass, intimidate and threaten us. Defendants and their ten year old daughter were frightened, intimidated and felt threatened by this show of force. Defendants are convinced that Plaintiff has filed this frivolous lawsuit in order to harass, threaten and intimidate Defendants and because Comcast knows that they don't own an easement on Defendants' private property and is afraid that their threatening, intimidating and bullying tactics against Defendants would cause Lafayette residents to drop Comcast.

## ARGUMENT

Plaintiff has embarked upon a pattern of bullying, intimidating, threatening and harassing behavior of Defendants in violation of State and Federal laws. Plaintiff's misconduct deprives Defendants of their rights to quiet enjoyment of their home and property as well as private property rights and threatens their health, safety and welfare. Plaintiff has threatened, bullied and intimidated neighbors, acted extremely irresponsibly, damaged their fences and property and let dogs out resulting in at least one instance of the dog being run over by a car. On December 5, 2018 at 7:00am, Plaintiff showed up at Defendants' residence with three vehicles and an Infinity truck and with at least people pounding on our front door in an effort to harass, intimidate and threaten us. Defendants and their ten year old daughter were frightened, intimidated and felt threatened by this show of force. Defendants are convinced that Plaintiff has filed this frivolous lawsuit in order to harass, threaten and intimidate Defendants and because Comcast knows that they don't own an easement on Defendants' private property and is afraid that their threatening, intimidating and bullying tactics against Defendants would cause Lafayette residents to drop Comcast. On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans. Is it any wonder that Defendants are afraid of Comcast?

**The Factors to be Considered Before Issuing a Temporary Restraining Order and Preliminary Injunction Fall Heavily in Defendants' Favor.**

   A. *Defendants Are Likely to Succeed on the Merits of Their Claims and Conversely Comcast Is Not Likely to Succeed on the Merits of Its Claims.*

Comcast's verified complaint and motion for temporary injunction and preliminary injunction is frivolous and was brought in bad faith in order to harass and intimidate Defendants. On December 6, 2018, Defendants filed Defendants' Rule 12(b)(5) Motion

7

to Dismiss which is pending before the court. Comcast will not succeed on its frivolous and bad faith claims.

B. *Comcast Is Unlikely To Succeed on its Cable Act Claim.*

Comcast is unlikely to prove that they own an easement on Defendants' private property. A cursory examination of the 1983 plat map shows that Comcast does not own an easement on Defendants' private property. The only utilities listed on the 1983 plat map are Public Service Co. and Mountain States Telephone. Furthermore, a review of Defendants' deed, title as well as what is recorded at the courthouse seems to indicate that Plaintiff does not own an easement on Defendants' private property. It is important to note that there is no HOA in Defendants' subdivision. Defendants seriously doubt that Comcast can prove that they own an easement on Defendants' private property. Furthermore, Comcast cannot prove that it is a public utility and not a private company and as a private company it can supersede private property rights. There is serious doubt that Comcast's franchise agreement with the City of Lafayette allows it to trespass on private property.

C. *Comcast Does Not Have An Easement On Defendants' Property*

Comcast cannot prove that they own an easement on Defendants' private property. Again, a cursory examination of the 1983 plat map shows that Comcast does not own an easement on Defendants' private property. The only utilities listed on the 1983 plat map are Public Service Co. and Mountain States Telephone. Furthermore, a review of Defendants' deed, title as well as what is recorded at the courthouse seems to indicate that Plaintiff does not own an easement on Defendants' private property. It is important to note that there is no HOA in Defendants' subdivision. Defendants seriously doubt that Comcast can prove that they own an easement on Defendants' private property. Furthermore, Comcast cannot prove that it is a public utility and not a private company and as a private company it can supersede private property rights. There is serious doubt that Comcast's franchise agreement with the City of Lafayette allows it to trespass on private property.

**D. *Comcast is Unlikely to Succeed on the Declaratory Judgment Claim.***

Comcast does not own an easement on Defendants' private property for all the reasons enumerated above. In fact, Comcast is interfering with Defendants' right to quiet enjoyment of their home and private property and is threatening private property rights as well as threatening Defendants' health, safety and welfare. On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans. Is it any wonder that Defendants are afraid of Comcast?

**E. Defendants Will Suffer Immediate and Irreparable Harm.**

Plaintiff's pattern of harassment, intimidation, threats, bullying, trespassing, character assassination, filing this frivolous lawsuit and defamation have caused and will continue to cause Defendants to suffer immediate and irreparable harm. Plaintiff's actions have resulted in extreme distress and harm to Defendants and their ten year old daughter. Defendants believe that Plaintiff through injured Defendants' dog and through negligence and maliciousness seriously injured another neighborhood dog as well as destroyed neighbors' fences and property. On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans. Is it any wonder that Defendants are afraid of Comcast? Defendants do not want Plaintiff's electric box on their property and want it immediately removed at Plaintiff's expense because they see it a threat to their health, safety and welfare

Defendants are afraid of the adverse health effects associated with Plaintiff's dangerous and lethal activities.

### F. Defendants Have No Plain, Speedy and Adequate Remedy of Law.

As detailed above, Plaintiff's continued pattern of harassment, intimidation, threats, bullying, trespassing, character assassination, filing this frivolous lawsuit and defamation have caused and will continue to cause Defendants to incur injuries that cannot be fully compensated by monetary damages, including any damage to Defendants' reputation and good will caused by Plaintiff's defamation and character assassination. It must be brought to the Court's attention that on October 18, 2018, Comcast workers contacted going door to door in order to disparage and defame Defendants. Plaintiff is a multi-billion dollar corporation that filed a frivolous lawsuit against Defendants and Defendants will continue to suffer irreparable damages for months, if not years, if required to fully litigate this case pro se before a resolution is reached. Therefore Defendants have no plain, speedy and adequate remedy at law.

### G. The Public Interest Is Served By Granting Defendants' Motion For a Temporary Restraining Order and Preventing Plaintiff From Harassing, Abusing, Threatening, Intimidating, Defaming, Character Assassinating, Harming Defendants', Defendants' Daughter, Defendants' Dog or Property and Preventing Plaintiff From Trespassing On Defendants' Property During Pendency of This Litigation Will Preserve The Status Quo.

Defendants are requesting that this Court restore the status quo by enjoining Plaintiff from unlawfully interfering with Defendants' right to quiet enjoyment, private property rights or threatening Defendants' health, safety and welfare. Furthermore, the public interest is served by granting Defendants' Motion for Temporary Restraining Order and Preliminary Injunction because Private property rights in Colorado must be respected and protected by the Courts as well as public health, safety and welfare. Finally, the balance of the equities falls in favor of granting the injunction in favor of Defendants.

**Defendants' Bond Should Be Waived**

Under Rule 54 (c), *no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.* The bond is subject to the discretion of the trial court and must bear *a reasonable relationship to the potential costs and losses occasioned by a preliminary injunction that has been improperly granted. Amtel Corp. v. Vitesse Semiconductor Corp.*, 30 P.3d 789, 796-97 (Colo. App. 2001). In this case, Defendants want to enjoin Plaintiff, including any of their agents, attorneys, employees, subcontractors, independent contractors or any other person who is in active concert or participation with them, from:

    (1) Harassing, Threatening, Trespassing, Intimidating, Defaming, Character Assassinating, Destroying Defendants' private property, Harming Defendants', Defendants' daughter or Defendants' dog;

    (2) Interfering with Defendants' quiet enjoyment of their home and property; and

    (3) Preclude Plaintiff from driving by Defendants' home and harassing Defendants, from conducting surveillance of Defendants and their property, knocking on Defendants' door and from going on Defendants' property during pendency of this litigation.

On December 10, 2018, Defendants' filed Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form). Accordingly, the bond should be waived.

## CONCLUSION

**WHEREFORE,** based upon the foregoing, Defendants Andrew J. O'Connor and Mary E. Henry respectfully request that this Honorable Court enter a Temporary Restraining Order and Preliminary Injunction enjoining Plaintiff, including any of their agents, attorneys, employees, subcontractors, independent contractors or any other person who is in active concert or participation with them, from:

(1) Harassing, Threatening, Trespassing, Intimidating, Defaming, Character Assassinating, Destroying Defendants' private property, Harming Defendants', Defendants' daughter or Defendants' dog;

(2) Interfering with Defendants' quiet enjoyment of their home and property; and

(3) Preclude Plaintiff from driving by Defendants' home and harassing Defendants, preclude Plaintiff from conducting surveillance of Defendants and their property, knocking on Defendants' door and from trespassing on Defendants' property during the pendency of this litigation.

**WHEREFORE,** based upon the foregoing, Defendants Andrew J. O'Connor and Mary E. Henry respectfully request that this Honorable Court grant Defendants' Motion for Temporary Restraining Order and Preliminary Injunction Pursuant to Rule 65 and grant any such further relief that the Court deems just and proper.

**Dated:** December 11, 2018

Respectfully submitted,
**ANDREW J. O'CONNOR AND MARY E. HENRY**

By: /s/
Pro Se Defendants
Andrew J. O'Connor and Mary E. Henry
1220 W. Devonshire Court
Boulder, CO 80026
Telephone: (303) 882-1693 and (303) 919-7124
Email: oconnorandrew@hotmail.com
Email: meandgriff@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of December 2018, a true and correct copy of **DDEFENDANTS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY HEARING PURSUANT TO RULE 65** was emailed and/or deposited in the United States Mail, first-class postage prepaid and addressed to:

Ballard Spahr
**Attn: J. Matthew Thornton**
1225 17th Street, Suite 2300
Denver, CO 80202
Tel: (303) 292-2400
Fax: (303) 296-3956
Email: thorntonj@ballardspahr.com
*Attorneys for Plaintiff*

                                              **ANDREW J. O'CONNOR**

                                              Andrew J. O'Connor