IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No: 18-cv-03158

COMCAST OF COLORADO I LLC,

    Plaintiff,

v.

ANDREW J. O'CONNOR and MARY E. HENRY, individually,

    Defendants.

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

DEC 28 2018

JEFFREY P. COLWELL
CLERK

---

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION TO REMAND

---

**COMES NOW,** Pro Se Defendants Andrew J. O'Connor and Mary E. Henry ("Defendants") and submits Defendants' Response in Opposition to Plaintiff's Expedited Motion to Remand and respectfully requests that the Court **deny** Plaintiff's Expedited Motion to Remand and as grounds therefore states as follows.

### FACTUAL BACKGROUND

Plaintiff is one of the most reviled corporations in the United States. Recently, Washington State Attorney General Bob Ferguson filed a lawsuit against cable television and Internet giant Comcast Corporation in King County Superior Court, alleging the company's own documents reveal a pattern of illegally deceiving their customers to pad their bottom line by tens of millions of dollars. The lawsuit accuses the company of more than 1.8 million violations of Washington State's Consumer Protection Act (CPA),

1

including misrepresenting the scope of its Service Protection Plan, charging customers improper service call fees and improper credit screening practices. The lawsuit also accuses Comcast of violating the CPA to all of its nearly 1.2 million Washington subscribers due to its deceptive "Comcast Guarantee."

In Vermont, Comcast this litigation-happy monolith is suing the state Public Utility Commission, claiming, among many other things, that its First Amendment rights have been violated (because the company is unhappy about the terms under which it is obliged to provide service there). Evidently, this most dishonest and predatory corporation is trying to have it both ways. In the present case it falsely claims that it *is* a public utility in order to trespass on Pro se Defendants' private property 24/7 without compensating the Pro Se Defendants; however, in Vermont and the rest of the United States Comcast states it is *not* a public utility because it does not want to be regulated nor pay its fair share in Federal or State taxes.

On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. It is clear, that Comcast is a dangerous and dishonest corporation that threatens the health, safety and welfare of Coloradoans.

All of Plaintiff's pleadings contain material misrepresentations; however, Plaintiff repeats several material misrepresentation that go to the core of this case and are as follows:

> A. *Since July 2018, Comcast has been engaged in a project to launch an "Advanced Fiber Optic Network Project" in the City of Lafayette. As part of that Project, Comcast representatives **must** (emphasis added) access Defendants' property...for the purpose of...updating that plant with fiber optic facilities...to perform its limited scope of work...harms the Defendants' neighbors by denying them access to the advanced services Comcast would provide upon completion of the upgrade project, and causes irreparable injury to Comcast through the impairment of its ability to provide services to customers.*

Said material misrepresentations raise several important questions that must be answered and, to date, Plaintiff has failed to answer:

1. **Why must Comcast access Pro Se Defendants' property in order to complete the Advanced Fiber Optic Network Project?**

Plaintiff has made a material misrepresentation and libeled Pro Se Defendants to the Courts and media. Pro Se Defendants do not believe that it is necessary for Plaintiff to access their property in order to complete an "Advanced Fiber Optic Network Project." In fact, there are no advanced fiber optic cables on Pro Se Defendants' property and as far as Pro Se Defendants know there are no plans to install advanced fiber optic cables on their property. To date, Plaintiff has failed to provide *any evidence* substantiating these legal conclusions.

2. **How does not accessing Pro Se Defendants' property harm their neighbors and deny them access to advanced services and impair its ability to provide services to customers?**

In October of 2018, Comcast workers knocked on the doors of Pro Se Defendants' neighbors and lied to them saying that Pro Se Defendants were the cause of them not being able to purchase high speed internet service from Comcast. On October 24, 2018, Comcast also repeated the lie to the Daily Camera and induced them to publish a false and misleading story with the headline, <u>Lafayette resident's Comcast dispute endangering service to hundreds of neighbors, company says</u>. Anthony Hahn, Daily Camera (October 24, 2018). The story quotes Comcast officials by falsely stating that the dispute between the parties *could cause service outages for hundreds of surrounding residents near Baseline Road and U.S. 287, company officials say*. Again, to date, Plaintiff has failed to provide ***any evidence*** that it must access Defendants' property in order to complete the *"Advanced Fiber Optic Network Project"* and that not accessing Defendants' property would somehow *cause service outages for hundreds of surrounding residents near Baseline Road and U.S. 287*. Not only was the story false it was defamatory.

3. **What does Comcast want to do on Pro Se Defendants' property for "approximately 1-2 hours" and what is in the green box on Pro Se Defendants' property and does it pose an existential threat to Pro Se Defendants' health, safety and welfare?**

To date, Plaintiff has refused and failed to explain to Pro Se Defendants what it wants to do on their property for "approximately 1-2 hours." Pro Se Defendants have repeatedly asked Comcast workers what is in the green box and why they want to access Pro Se Defendants' property and what work do they have to perform there and Plaintiff has

always refused to answer Pro Se Defendants' reasonable questions.

According to a May 1, 2000 article in Electrical Construction and Maintenance Magazine, <u>Don't Ignore Hazards with Fiber Optic</u>, https://www.ecmweb.com/content/dont-ignore-hazards-associated-fiber-optics, there are significant safety hazards associated with installation of fiber optic cable. Another article details the safety risks of explosions with high optic fiber networks. https://www.microsens.com/whitepapers/safety-of-optical-fiber-networks-in-potentially-explosive-areas/.

On November 20, 2018, local news outlets reported that Comcast workers drilling underground for fiber optic cable struck buried natural gas lines at a senior living community in east suburban Denver shortly before a fatal explosion that burned several homes. Aurora Fire Rescue spokeswoman Sherri-Jo Stowell told The Denver Post firefighters were at Heather Gardens Friday investigating a gas leak when the explosion occurred. The blast killed 82-year-old Carol Ross. A January 31, 2016, article in Natural Medicine details the significant health risks associated with fiber optic cable. http://www.naturalmedicine.net.nz/news/considering-ultrafast-broadband/

It is clear, that Comcast is a dangerous and dishonest corporation that does not care about Pro Se Defendants' health, safety or welfare. Plaintiff's activities absolutely threaten the health, safety and welfare of Pro Se Defendants and all Coloradoans. Pro Se Defendants have a ten (10) year old daughter and a beloved dog that lives in the backyard and they are very uncomfortable with the existential risks that Plaintiff's activities pose to the health, safety and welfare of Pro Se Defendants.

5

B. *Comcast has a legal right to access the Property **by way** (emphasis added) of a public utility easement granted to the City of Lafayette and a Cable Franchise Agreement entered into by and between the City of Lafayette and Comcast.*

1. **Does Comcast have a legal right to access Pro Se Defendants' private property and does it own an express easement on Pro Se Defendants' private property?**

Pro Se Defendants believe that Plaintiff ***does not*** have a legal right to access their property because Comcast ***does not*** own an express easement on Pro Se Defendants' property and Plaintiff cannot prove it does.

Pro Se Defendants also believe that the Franchise Agreement between Comcast and the City of Lafayette does not grant an implied easement onto their private property. Furthermore, Pro Se Defendants believe that the Franchise Agreement between Comcast and the City of Lafayette franchise agreement is invalid and is therefore null and void.

These are clearly Federal questions involving Federal law including, but not limited to:
   a. Whether the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, applies to the case?
   b. Does Plaintiff's lawsuit against the Pro Se Defendants impact the 4th and 5th Amendments of the U.S. Constitution?

After establishing a pattern of harassing, bullying, abusing, intimidating and threatening tactics, Plaintiff erroneously and intentionally filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in Boulder District Court in Case No: 018CV31084 in order to waste court resources and do an end of around the Federal Court. The reason that Plaintiff filed Verified Complaint and Motion for Temporary Restraining Order and Preliminary Injunction in Boulder District Court is because Plaintiff wanted to do an end around and does not want litigate this case on the merits in Federal Court. There are really only two core questions in this case which are:

a. Is Comcast a public utility in Colorado and the U.S.?
b. Does Comcast have an express easement on Pro Se Defendants' private property?

The answer to both questions is an unequivocal **"NO"**. The Plaintiff knows that it will lose on the merits in Federal Court. That is the reason that for the attempted end around by Plaintiff in filing the Motion for Temporary Restraining Order and Preliminary Injunction in state court.

Plaintiff has made so many material misrepresentations to both State and Federal Court that Pro Se Defendants have lost count. Plaintiff lied to the lower court and falsely stated that Pro Se Defendants violated the Temporary Restraining Order which constitutes a fraud upon the Court and as a result Plaintiff should be sanctioned. In fact, Pro Se Defendants did not violate the Temporary Restraining Order and the TRO was erroneously entered because the state court lacked jurisdiction and failed to determine whether Plaintiff was a public utility and whether Plaintiff had an express easement before erroneously entering the TRO.

Venue and jurisdiction were improper in District Court, Boulder County, Colorado because Plaintiff continually cites in its pleadings the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541 as the governing, substantive Federal law that is controlling in this action and even repeatedly states in its pleadings that is well established Federal law.

This case involves several Federal questions that arise under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, as well as under the 4th and 5th Amendments of the U.S. Constitution that must be litigated and determined under Federal law. Furthermore, diversity of citizenship exists pursuant to 28 U.S.C. § 1332 (a) because Plaintiff is an out of state corporation with its principal place of business located in Philadelphia, Pennsylvania and Pro Se Defendants are residents of Lafayette, Colorado.

The question of whether a U.S. citizen's private property rights are subordinated to the commercial interests of a private company is a Federal question and is a matter to be determined under Federal law. This case implicates both the 4th and 5th Amendments of the U.S. Constitution. The 4th Amendment is implicated because State Action is involved because Plaintiff used the Lafayette Police Department in order to try to get Pro Se Defendant O'Connor arrested and the police harassed, intimidated and threatened Pro Se Defendants on several occasions. The 4th Amendment states:

*The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,*

*and particularly describing the place to be searched, and the persons or things to be seized.*

The 5th Amendment further protects private property and states:

*No person shall be ... deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.*

Plaintiff has attempted a taking of Pro Se Defendants' private property and refused to compensate Pro Se Defendants. Plaintiff's unlawful and unconstitutional actions have deprived Pro Se Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution. Plaintiff's lawsuit clearly generates Federal questions under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, as well as under the 4th and 5th Amendments of the U.S. Constitution.

## ARGUMENT

### I. THIS CASE SHOULD REMAIN IN FEDERAL COURT AND SHOULD NOT BE REMANDED TO STATE COURT BECAUSE THIS COURT HAS FEDERAL SUBJECT MATTER JURISDICTION AND THIS CASE POSES SEVERAL IMPORTANT FEDERAL QUESTIONS

Pro Se Defendants properly removed this case to Federal Court pursuant to 28 U.S.C. § 1447. On December 10, 2018, the state court closed the lower court case confirming that the case was properly removed to Federal Court.

Plaintiff erroneously relies upon and misstates the holding in *City of Albuquerque v. Soto Enterprises, Inc.*, 864 F.3d 1089 (10th Cir. 2017). Said case is inapplicable to the present

case for several reasons as follows.

In order to challenge the sufficiency of removal to Federal Court, the Plaintiff must establish that the Federal Court lacks subject matter jurisdiction *and* a defect in removal exists. The Plaintiff's argument fails on both counts and it cannot establish either requirement. The Federal Court has subject matter jurisdiction in this case because Plaintiff's unlawful actions have deprived Pro Se Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution and Plaintiff's lawsuit clearly generates Federal questions under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, which they say is well established Federal law.

Even different Federal District Courts disagree about whether waiver by participation even falls within either of § 1447 (c) two bases. *Henry v. UTE Indian Tribe of Uintah & Ouray Reservation*, 757 F. 3d 800, 804 (10th Cir. 2015). Pro Se Defendants don't believe that it does. In the present case, there is neither lack of subject matter jurisdiction nor any defect. Pro Se Defendants did not fail to comply with the statutory requirements for removal; consequently, there is no defect. *Rothner*, 879 F.2d 1407-08.

Plaintiff erroneously argues "waiver by participation." Pro Se Defendants immediately filed Notice of Removal Pursuant to 28 U.S.C. § 1446 (a) on November 10, 2018 and properly removed the case to Federal Court. In fact, there was no discovery, no argument, and the only hearing was on December 10, 2018, and lasted less than ten (10) minutes. There was no "waiver by participation" by Pro Se Defendants. *Rotner v. City of Chicago*, 879 F. 2d 1407, 1409 (7th Cir. 1989). Furthermore, there was never *a willingness to*

*litigate in state court*. In fact, it is exactly the opposite because by Pro Se Defendants filed Notice of Removal Pursuant to 28 U.S.C. § 1446 (a) on December 10, 2018. By doing so, Pro Se Defendants demonstrated their willingness to litigate this case on the merits in Federal Court.

Finally, *City of Albuquerque* case articulates an exception which clearly applies to the Pro Se Defendants as follows:

*We will not find a waiver of the right to remove when a state's procedural rules compel a defendant's state court participation. For this exception to apply, we look potential harm to defendant. May v. Board of County Commissioners*, 945 F. Supp. 2d 1277 (D.N.M. 2013).

The Colorado Rules of Civil Procedure compelled Pro Se Defendants to file pleadings, answer and affirmative defenses or they are deemed waived. If Pro Se Defendants failed to comply with the Colorado Rules of Civil Procedure and failed to file pleadings, answer and affirmative defenses in state court then they would have suffered grievous harm to the case.

This case was properly removed to Federal Court because there is subject matter jurisdiction because Plaintiff's unlawful actions have deprived Pro Se Defendants of their rights under the 4th and 5th Amendments of the U.S. Constitution and Plaintiff's lawsuit clearly generates Federal questions under the Cable Communication Policy Act of 1984, 47 U.S.C. § 1541, as well as under the 4th and 5th Amendments of the U.S. Constitution. There is subject matter jurisdiction and there were no defects in removal; consequently,

*City of* Albuquerque does not apply to the present case and even if it did, then the exception articulated in said case applies to Pro Se Defendants.

## II. THE COURT SHOULD AWARD PRO SE DEFENDANTS EXPENSES, INCLUDING ATTORNEY FEES, BECAUSE PLAINTIFF LACKED AN OBJECTIVELY REASONABLE BASIS TO FILE EXPEDITED MOTION TO REMAND AND THIS CASE IS FRIVOLOUS

As in everything it does, Plaintiff is inherently dishonest, bullying and disingenuous and always wants to have it both ways. Plaintiff cites 28 U. S.C. § 1447 (d) which provides *an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.*

Plaintiff disingenuously argues that Pro Se Defendant O'Connor is not entitled to pro se deference because he is a *trained attorney*. Plaintiff proceeds to character assassinate Pro Se Defendant O'Connor by misstating and mischaracterizing a case from 2007. What Plaintiff conveniently leaves out is that Pro Se Defendant O'Connor was nearly killed when he was hit head-on by a drunk driver in Florida in 1992 and that he suffered multiple blunt trauma injuries including a traumatic brain injury resulting in being hospitalized for over thirteen (13) months and was placed on the Florida Bar's inactive list for medical incapacity not related to misconduct. There was no material misrepresentation made to the New Mexico Supreme Court and Pro Se Defendant O'Connor was and Pro Se Defendant was always in good standing with the Florida Bar. It seems that Plaintiff knows that it is losing this case and has resorted to character assassinating Pro Se Defendant O'Connor in an attempt to discredit him with the Court. Plaintiff should be sanctioned for this outrageous conduct.

Plaintiff cannot have it both ways. Plaintiff cannot say that Pro Se Defendant O'Connor is an attorney and not entitled to pro se deference despite his injuries and traumatic brain injuries and then say that Pro Se Defendant O'Connor is not entitled to attorney fees. Defendant was permanently disabled and suffers from cognitive deficiencies as a result of his traumatic brain injury and is absolutely entitled to pro se deference.

However, Pro Se Defendant O'Connor is not the only person that Plaintiff sued because Plaintiff sued Pro Se Defendant O'Connor's wife Pro Se Defendant Henry and Pro Se Defendant is unquestionably entitled to pro se deference. In fact, both Pro Se Defendants are entitled to pro se deference.

Finally, the Court should consider the Plaintiff's material misrepresentations, defamation, threats, abusive misconduct and the intimidating and harassing tactics employed by Plaintiff as well as the frivolous nature of this lawsuit and pleadings and award Pro Se Defendants attorney fees and costs.

## CONCLUSION

**WHEREFORE,** based upon the foregoing; Pro Se Defendants Andrew J. O'Connor and Mary E. Henry respectfully request that this Court **deny** Plaintiff's Expedited Motion to Remand and grant any such further relief that the Court deems just and proper including sanctions against Plaintiff and award of attorney fees.

**Dated:** December 26, 2018

Respectfully submitted,
**ANDREW J. O'CONNOR AND MARY E. HENRY**

By: /s/ Andrew J. O'Connor
Pro Se Defendants
Andrew J. O'Connor and Mary E. Henry
1220 W. Devonshire Court
Boulder, CO 80026
Telephone: (303) 882-1693 and (303) 919-7124
Email: oconnorandrew@hotmail.com
Email: meandgriff@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December 2018, a true and correct copy of **DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S EXPEDITED MOTION TO REMAND** was emailed and/or deposited in the United States Mail, first-class postage prepaid and addressed to:

Ballard Spahr
**Attn: J. Matthew Thornton**
1225 17th Street, Suite 2300
Denver, CO 80202
Tel: (303) 292-2400
Fax: (303) 296-3956
Email: thorntonj@ballardspahr.com
*Attorneys for Plaintiff*

**ANDREW J. O'CONNOR**

Andrew J. O'Connor

Andrew J. O'Connor
1220 W. Devonshire Court
Lafayette, Colorado 80026
(303) 882-1609
oconnorandrew@hotmail.com

December 26, 2018

*VIA REGULAR U.S. MAIL*

Alfred A. Arraj United States Courthouse, Room A105
**Attn: Clerk's Office**
901 19th Street
Denver, CO 80294-3589
Tel: (303) 844-3433

Re: *Comcast v. O'Connor et al.,* **Case No: 18-cv-03158-GPG**
   **Defendants' Response In Opposition to Plaintiff's Expedited Motion to Remand**

Dear Clerk of Court:

Please find enclosed Defendants' Response In Opposition to Plaintiff's Expedited Motion to Remand for filing and docketing in *Comcast v. O'Connor et al.,* Case No: 18-cv-03158-GPG.

If you have any questions in this regard, then please do not hesitate to contact me. Thank you.

Sincerely,

Andrew J. O'Connor
Enclosure

Andrew O'Connor
1220 Devonshire Ct.
Lafayette, CO 80026



7018 0680 0000 5556 8843

CERTIFIED MAIL

Alfred A. Arraj U.S. Courthouse
Room A105
Attn: Clerk's Office
901 19th Street
Denver, CO 80294-3589

U.S. POSTAGE PAID
FCM LG ENV
LAFAYETTE, CO
80026
DEC 26, 18
AMOUNT
$4.87
R2304M110149-02